UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION,

        Plaintiff,

-against-

STEINER SPORTS MARKETING, INC.

        Defendants.

08 Civ. 04570 (VM)

**AFFIRMATION OF HAROLD F. McGUIRE, JR. IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

---

HAROLD F. McGUIRE, JR., upon penalty of perjury, affirms as follows:

1. I am a member of the Bar of this Court and one of the attorneys for Plaintiff Major League Baseball Players Association herein.

2. Defendant Steiner Sports Marketing, Inc. has not yet answered the Amended Complaint which was filed herein on May 23, 2008. After an extension of time, defendant moved to dismiss Count V of that Complaint. That motion is pending. Plaintiff has not served any responsive papers.

3. Plaintiff moves hereby to replace the Amended Complaint with the Second Amended Complaint attached hereto as Exhibit A. That Second Amended Complaint does not contain the Count V which is the subject of the pending motion to dismiss, but substitutes a different Count V asserting different claims. Accordingly, if the motion to file the Second Amended Complaint is granted, the pending motion to dismiss Count V will become moot.

4. Defendant will suffer no prejudice as a result of the substitution of the new Second Amended Complaint because there have been no proceedings herein based on the existing Count V. Rule 15(a)(1)(A) Fed. R. Civ. P. provides that "the court should freely give leave [to amend the complaint] when justice so requires." It is respectfully submitted that this is just such a situation.

5. Plaintiff has sought defendant's consent to this motion which has been refused.

Dated: August 27, 2008

                                                    Harold F. McGuire, Jr.

EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
SOUTHERN DIVISION

| | |
|---|---|
| MAJOR LEAGUE BASEBALL<br>PLAYERS ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>STEINER SPORTS MARKETING, INC.,<br><br>    Defendant. | Case No. 08-CIV-04570 |

## SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Major League Baseball Players Association, for its Second Amended Complaint for Damages and Injunctive relief, states as follows:

1. Plaintiff Major League Baseball Players Association ("Players Association") is an unincorporated association whose members are active Major League baseball players.

2. The Players Association, among other things, owns the exclusive right to use and authorize others to use the names, nicknames, signatures, likenesses, numbers, biographical information and other identifying characteristics of its members when any such identifying characteristics ("Player Rights") of three (3) or more active Major League baseball players are used on or in connection with a product, product line or other commercial venture.

3. The Players Association obtains the exclusive right to use and license others to use Player Rights from its members, virtually all of whom sign each year commercial authorization agreements that designate the Players Association as their exclusive agent for the group licensing of Player Rights. All Major League players know and agree that any person who desires to use Player Rights of three (3) or more active Major League players on or in connection with a product or product line must first obtain a license from the Players Association.

2238925.05

4.  The Players Association also owns and uses a number of trademarks, the goodwill associated with those marks and United States Trademark Registrations of those marks. These marks are used on products licensed by the Players Association in accordance with licenses granted by the Players Association. These marks serve to inform the consuming public that the products on which the marks appear are licensed and approved by the Players Association and its members.

5.  Defendant Steiner Sports ("Steiner") is, on information and belief, a New York corporation headquartered in New Rochelle, New York, and doing business in New York and elsewhere. Steiner is in the business of producing and selling sports memorabilia and collectibles. Steiner is a former licensee of the Players Association.

6.  This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338 (a) and (b) in that the claims arise out of the statutes of the United States, and 28 U.S.C. § 1367 with respect to the state law claims included herein.

7.  This Court has jurisdiction over defendant because defendant's principal place of business is in New York and in this District, and because defendant does business in this State. Plaintiff's claims arise out of defendant's business in this State and elsewhere.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that defendant resides in and can be found in this District, and a substantial part of the events giving rise to plaintiff's claims occurred in this District.

## FACTS AND BACKGROUND

9.  The Players Association has for over forty (40) years operated a group licensing program under which the Association licenses dozens of persons to use Player Rights in connection with various products and services. Licensed products have included trading cards, apparel, posters, games, plush toys, photographs, books, and many other products and product

lines. Persons receiving Players Association licenses compensate the Association by paying royalties or other payments.

10. All products licensed by the Players Association are required to bear and display one or more of the Players Association's trademarks. The Players Association owns many trademarks, including the mark MLB PLAYERS CHOICE and Design and the Baseball Player DESIGN mark, the goodwill associated with those marks and United States Trademark Registrations for those marks. The Players Association insists that its licensees display one or more of the Players Association marks to inform the consuming public that the products are genuine licensed products authorized by and produced in accordance with the quality standards of the Players Association. Products that bear a Players Association mark carry with them the additional value that comes from being officially licensed.

11. Since at least as early as 1996 and 1997, respectively, the Players Association, though its licensees, has continually used its MLB PLAYERS CHOICE and Design and Baseball Player DESIGN marks in connection with a wide variety of goods. Licensees of the Players Association sell its MLB PLAYERS CHOICE and Design and Baseball Player DESIGN trademarked goods throughout the United States, including New York.

12. The Players Association and its licensees have spent considerable amounts of time, effort and money in establishing goodwill in its MLB PLAYERS CHOICE and Design and Baseball Player DESIGN marks and have sold large numbers of products under these marks. These marks have become distinctive as an indication of the source or origin of a wide variety of products offered by the Players Association through its licensees.

13. The Players Association's MLB PLAYERS CHOICE and Design trademark is registered on the Principal Register of the United States Patent and Trademark Office as Registration No. 2,573,984 for jackets, tank tops and wrist bands. A copy of the registration is attached as Exhibit A. The registration was issued May 28, 2002.

14. The Players Association's MLB PLAYERS CHOICE and Design trademark is also registered on the Principal Register of the United States Patent and Trademark Office as Registration No. 2,553,756 for trading cards, stickers, posters, decals, post cards, calendars, mounted and unmounted photos, book covers, paper pennants, stationery-type portfolios, magazines in the field of sports and sports trading cards; T-shirts, sweatshirts, shorts, jerseys, caps, hats and sport shirts; baseballs, video game cartridges, computer game programs, board games, action figures, dolls, stuffed toys, and hand held units for playing video games. A copy of the registration is attached as Exhibit B. The registration was issued on March 26, 2002.

15. The Players Association's Baseball Player DESIGN mark is also registered on the Principal Register of the United States Patent and Trademark Office as Registration No. 2,215,399 for video game cartridges and computer game programs; trading cards, stickers, 0playing cards, posters, decals, stationery, calendars, mounted and unmounted photographs, stationery-type portfolios, newsletters featuring baseball, magazines in the field of sports, sports trading cards; T-shirts, sweatshirts, jerseys, jackets, caps, hats and sport shirts. The registration was issued on December 29, 1998, and is incontestable.

16. Through its licensees, the Players Association advertises and sells its goods and services through and in connection with the MLB PLAYERS CHOICE and Design and Baseball Player DESIGN marks in a wide variety of venues throughout the United States.

17. Defendant Steiner applied for and received a license from the Players Association in 2001. The license allowed Steiner to produce and sell a line of photographs, signed and unsigned, of active Major League baseball players. Each product produced and sold by Steiner was required to display, and did display, the MLB PLAYERS CHOICE and Design mark, signifying to the consuming public that the product was authentic and licensed.

18. As part of Steiner's license agreement, Steiner agreed that the Players Association owned the Player Rights and rights to the Players Association's trademarks that would appear on

Steiner's products, and further agreed that Steiner would not, during or after the license period, use Player Rights or Players Association trademarks on any product without the Association's written permission. Steiner further agreed that the Association's rights were valid and that Steiner would not contest or challenge those rights, during or after the license period.

19. Steiner's license agreement expired on or about December 31, 2005.

20. In 2007 the Players Association learned that Steiner was producing and offering for sale sets of autographed photographs of active Major League baseball players without a license from the Players Association. The Players Association notified defendant by letter of its infringing activity. In response to the cease and desist letter, Steiner's counsel assured the Association that Steiner would be reviewing its activities to ensure that they did not infringe any of the Association's rights. Steiner also indicated that it respected the Players Association's rights and that it would apply for a license. It never did.

21. Later in 2007, however, Steiner offered for sale a number of products purportedly bearing the signatures of more than a dozen members of the Boston Red Sox baseball club. These products were offered for sale without a license from the Players Association and infringed the Association's exclusive rights.

22. In January 2008, the Players Association learned that Steiner was preparing to release another unlicensed line of products using Player Rights, this time commemorative artifact displays, including framed photographs of active Major League baseball players along with a name plate bearing biographical data and an artifact, for example dirt from the infield at Yankees Stadium. The photographs display the MLB PLAYERS CHOICE and Design trademark, even though the commemorative displays include Player Rights and are neither licensed nor approved by the Players Association. The Players Association demanded that Steiner pull the products from the market, but that demand has gone unanswered.

## COUNT I

### Trademark Infringement: Lanham Act, 15 U.S.C. § 1114

23. Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 22, above.

24. Defendant Steiner has used and is continuing to use the MLB PLAYERS CHOICE and Design and Baseball Player DESIGN marks on and in connection with products sold by Steiner without the permission of the Players Association.

25. Such use is likely to cause confusion or mistake or deception among the consuming public as to the origin or sponsorship of Steiner's goods, particularly suggesting to the public that such goods are licensed or approved by the Players Association when that is not true.

26. Purchasers are likely to purchase Steiner's goods based on the false association with the Players Association's licensed products, thereby resulting in the loss of sales to the Players Association's *bona fide* licensees.

27. The Players Association has no control over the quality of the goods offered by defendant and, because of the confusion as to source caused by Steiner, the Players Association's valuable goodwill in its trademarks is damaged by the actions of defendant.

28. Defendant's conduct has damaged the Players Association. It has deprived the Association of royalties and other payments, and threatens to reduce the value of its licenses because many licensees will tend not to pay royalties for what others use for free. In addition, the Association believes that defendant has realized substantial profits from its infringement, which profits should be accounted for and disgorged.

29. The Players Association has complied with the provisions of 15 U.S.C. § 1111 in that defendant has had actual knowledge for years of the Players Association's rights in its

trademarks and that no person may use such marks on products without the Players Association's permission.

30. Defendant's infringement of the Players Association's registered trademarks has been willful, deliberate and designed specifically to trade upon the goodwill associated with the Players Association's goods and trademarks.

31. In addition, defendant's infringement is ongoing and leaves plaintiff without an adequate remedy at law, justifying preliminary and permanent injunctive relief.

## COUNT II

### Trademark Infringement and Unfair Competition: Lanham Act, 15 U.S.C. § 1125(a)

32. Plaintiff incorporates by this reference the allegations contained in paragraphs 1-31, above.

33. Steiner has, in connection with the sale of goods in commerce, used the Players Association's registered trademarks in association with goods and commemorative artifact displays, has falsely designated the origin of its goods and commemorative artifact displays and provided false or misleading descriptions or representations of fact regarding its commemorative artifact displays which are likely to cause confusion and mistake or to deceive the public and create the impression that Steiner is affiliated, connected or associated with the Players Association, or that the Players Association is the origin or sponsor or has approved Steiner's commemorative artifact displays, when in fact, the Players Association has not done so.

34. Steiner's actions constitute a violation of 15 U.S.C. § 1125(a).

## COUNT III

### Trademark Counterfeiting

35. Plaintiff incorporates by this reference the allegations contained in paragraphs 1-34, above.

36. Defendant's use of the Players Association's registered marks in connection with the sale of commemorative artifact displays incorporating artifacts, name plates and frames from other sources is likely to cause confusion, mistake or to deceive consumers and constitutes trademark counterfeiting in violation of 15 U.S.C. §§ 1114 and 1116.

## COUNT IV

### New York Common Law Trademark Infringement and Unfair Competition

37. Plaintiff incorporates by this reference the allegations contained in paragraphs 1-36, above.

38. The Players Association's PLAYERS CHOICE and Design and Baseball Player DESIGN are valid and protected marks and the Players Association has the exclusive right to use those marks under New York common law.

39. By reason of the actions set forth above, defendant, with knowledge that it was violating the Players Association's rights in its marks, has committed trademark infringement, unfair competition and conversion of the mark in violation of New York common law.

## COUNT V

### Tortious Interference With Contract

40. Plaintiff incorporates the allegations in paragraphs 1 through 39, above, by this reference as if set forth in full herein.

41. Plaintiff has entered into and continues to enter into the commercial authorization agreements mentioned above with its player-members. These authorization agreements are valid and existing contracts that grant to the Players Association the exclusive right to use, and license others to use, the players' names, nicknames, signatures, likenesses or photographs, alone or in connection with other products ("player rights") when such player rights are used in groups of three (3) or more for any commercial venture, product or product line, including the sale of memorabilia and other products. The Players Association has valid and in-force contracts of this

type with, to the best of the Players Association's knowledge, all active Major League baseball players whose player rights are being used by defendant.

42. Defendant knows of the existence of such contracts, and of the exclusive nature of the Players Association's rights, *at least* because defendant was between 2001-2005 a licensee of the Players Association with full knowledge of the scope and nature of the Players Association's rights vis-à-vis the players.

43. Defendant has, on information and belief, induced active Major League baseball players, who have previously signed the contracts referred to in paragraph 41 above, to breach such contracts by subsequently agreeing to allow defendant to sell photographs and other memorabilia or products bearing or using player rights of three (3) or more active players without a license from the Players Association. Defendant has, therefore, knowingly, willfully and wrongfully interfered with the exclusive contracts between the Players Association and the players.

44. Defendant's wrongful interference is without legal justification or excuse.

45. Defendant's wrongful interference has damaged the Players Association, by depriving it of the full benefits of its contracts with its player-members, including the right to control group licensing and the right to collect royalties and other consideration from licensees.

46. Defendant's wrongful conduct is knowing, willful and intentional, thus entitling the Players Association to punitive damages to punish defendant and to deter it and others from engaging in like conduct in the future.

47. Plaintiff has been damaged as a result of defendant's tortious interference. Plaintiff has been deprived of royalties or other compensation for the use of Player Rights, and defendant's conduct threatens to reduce the value of other licenses because many licensees will tend not to pay for what others use for free. In addition, the Association believes that defendant

has realized substantial profits from its interference, which profits should be accounted for and disgorged.

## COUNT VI

### Breach of Contract

48. Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 47 above.

49. Defendant entered into License Agreements with the Players Association on or about July 1, 2001 and January 1, 2003.

50. That agreements provided in part that during and after the expiration of the license period, defendant would not make any use of Player Rights or the Players Association's trademarks except as allowed by the License Agreements. The License Agreements also provided that defendant would not, during or after the expiration of the license period, challenge the Players Association's ownership of the Player Rights or the validity of such rights.

51. Plaintiff performed all of its obligations under the License Agreements or was excused from doing so.

52. Defendant has used and is continuing to use Player Rights in association with the sale of commemorative artifact display products without the permission of the Players Association. Defendant's conduct thus violates the "no-use" provisions of the License Agreements and constitutes a breach of those Agreements.

53. Plaintiff has been damaged as a result of defendant's breach. Plaintiff has been deprived of royalties or other compensation for the use of Player Rights, and defendant's conduct threatens to reduce the value of other licenses because many licensees will tend not to pay for others use for free. In addition, the Association believes that defendant has realized substantial profits from its infringement, which profits should be accounted for and disgorged.

WHEREFORE, plaintiff prays for an Order and Judgment as follows:

A.  Preliminarily and permanently enjoining Defendants, or any persons acting in concert with defendant or on its behalf, from producing, offering, advertising or selling any product(s) that use Player Rights without the express written consent of the Players Association and from using the trademarks MLB PLAYERS CHOICE and Design and/or the Baseball Player DESIGN or any colorable variation thereof in connection with the sale of any commemorative artifact display products or other goods, or other wise infringing the Players Association's trademarks, unfairly competing with the Players Association and from in any way associating defendant's goods with the Players Association in accordance with the terms of 15 U.S.C. § 1116;

B.  Confiscating all material bearing counterfeits of the Players Association's registered trademark(s), including all such products that have been shipped to retailers, and delivering them up for destruction in accordance with the terms of 15 U.S.C. § 1118;

C.  Ordering an accounting of defendant's profits from their counterfeiting, infringing and acts of unfair competition;

D.  Awarding the Players Association compensatory damages, defendant's profits, full costs, treble damages and reasonable attorneys fees in accordance with 15 U.S.C. § 1117(a) and (b), including prejudgment interest in accordance with 26 U.S.C. 6621(a)(2);

E.  In lieu of compensatory damages and at the election of the Players Association, awarding statutory damages of up to one million dollars ($1,000,000) for defendant's willful counterfeiting of the Players Association's registered marks in accordance with 15 U.S.C. § 1117(c);

F.  Awarding the Players Association actual damages in an amount as might be proved at trial for tortious interference and breach of contract, as well as punitive damages against defendant in view of defendant's willful conduct as alleged herein; and

G.  Awarding the Players Association such other relief as the Court deems just and proper.

Respectfully submitted,

_____
HAROLD F. McGUIRE                NY #_____
ENTWISTLE & CAPPUCCI
299 Park Avenue
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
Email: hmcguire@entwistle-law.com

RUSSELL S. JONES, JR.            MO #30814
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza, 120 W. 12th Street
Kansas City MO 64105
Telephone: (816) 421-3355
Facsimile: (816) 374-0509
Email: rjones@stklaw.com

**ATTORNEYS FOR PLAINTIFF
MAJOR LEAGUE BASEBALL
PLAYERS ASSOCIATION**